## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| A-1 PACKAGING SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-CV-2205 |
| | ) | |
| RFID RESOLUTION TEAM, INC. d/b/a | ) | |
| FIREFLY RFID SOLUTIONS, a North | ) | |
| Carolina Corporation, JOUKO | ) | |
| LAHEPELTO, Individually, | ) | |
| DR. WILLIAM DAVIDSON, Individually, | ) | |
| and JAN SVOBODA, Individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| FIREFLY RFID SOLUTIONS, INC., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A-1 PACKAGING SOLUTIONS, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motions to Dismiss filed

by Dr. William Davidson (d/e 45) and RFID Resolution Team Inc.

d/b/a Firefly RFID Solutions (Firefly), Jouko Lahepelto, and Jan

Svoboda (d/e 47).[1]  Defendants seek to dismiss various Counts of

the Second Amended Complaint filed by Plaintiff A-1 Packaging

Solutions, Inc.  The Motions are GRANTED IN PART and DENIED

IN PART.  Counts IV, V, and VI against Davidson are DISMISSED.

Count V against Lahepelto and Svoboda is DISMISSED.

## I. PROCEDURAL BACKGROUND

The dispute in this case arises from an alleged agreement

between Plaintiff and Firefly for the design and installation of a

RFID (Radio Frequency Identification) Tracking System of Plaintiff's

customer, Fiberteq, LLC, located in Danville, Illinois.

On September 15, 2017, Plaintiff filed the original complaint.  On

October 5, 2017, Plaintiff filed a seven-count amended complaint.

Defendants filed motions to dismiss.

In May 2018, United States District Judge Colin S. Bruce

granted in part and denied in part the motions to dismiss.  Order

(d/e 40).  Specifically, the Court dismissed the tortious inference

claim brought against Davidson and the deceptive trade practices

claim as to all of the defendants.  The Court also dismissed the

_____

[1] Although Firefly filed a Counter-Complaint against A-1 Packaging Solutions,
Inc., the  Court will simply refer to the parties as "plaintiff" and "defendant(s)."

quantum meruit and unjust enrichment claims because Plaintiff expressly alleged the existence of a contract within those counts.

In June 2018, Plaintiff filed a Second Amended Complaint. Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On November 7, 2018, Judge Bruce recused himself from participation in this matter, and the case was reassigned to the undersigned judge.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

### III. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

The following facts come from the Second Amended Complaint and are accepted as true at the motion to dismiss stage. Tamayo, 526 F.3d at 1081.

Plaintiff is a corporation that selects and provides RFID (Radio Frequency Identification) technologies from more than 170 manufacturers to provide comprehensive solutions for customers. Fiberteq hired Plaintiff to design a custom asset and inventory tracking system for Fiberteq's facility in Danville, Illinois. Plaintiff considered manufacturers of the relevant technology that would be needed to complete the technology and reached out to potential subcontractors and suppliers.

Defendant Davidson, who was at that time the Chief Technology Officer at Firefly, and Defendant Svoboda, the President of Firefly, made numerous claims and commitments to Plaintiff about Firefly's experience, capabilities, and ability to deliver products and services on a timely basis. In March 2015, Defendant Davidson told Plaintiff that Firefly had expertise in RFID hardware, deployments, and integration and had the capability to build custom software for Plaintiff. In May 2015, a representative of Plaintiff explained to Defendant Davidson that Plaintiff needed to own the software created. Davidson agreed that Firefly would transfer ownership rights in any software created in connection with the Fiberteq project.

Based on Davidson's representations, Plaintiff retained Firefly to assist in designing an RFID system for Fiberteq. Plaintiff paid for Firefly to provide a site assessment at Fiberteq's facility. After the visit, Davidson prepared a proposal for implementing a system that Firefly represented could satisfy Fiberteq's needs and provided a quote of costs for the Fiberteq installation.

Firefly was responsible for selecting all solutions to be used in the applications. Davidson proposed a solution premised upon the

use of Convergence Systems Ltd. hardware and software. Davidson stated that he previously used Convergence Systems Ltd. at an installation for General Electric and affirmed that Firefly had the technical experience to complete the project.

Plaintiff used Firefly's quote to provide Fiberteq with a final proposal. In early December 2015, Fiberteq awarded Plaintiff the project to create an asset and inventory tracking system for Fiberteq's Danville facility. In reliance on Firefly's representations regarding its technical experience, capabilities, and ability to complete the project in a timely manner, Plaintiff retained Firefly to provide the hardware, software, installation, training, and documentation for the Fiberteq project as Firefly previously quoted.

Fiberteq requested that the installation take place the week of February 22, 2016. Defendant Davidson stated that Firefly could meet this deadline. Davidson also stated Firefly needed a 50% deposit on the hardware to start working on the project with the remaining funds due upon completion of the project. Plaintiff paid Firefly $47,579 on December 16, 2015.

In January 2016, Defendants Svoboda and Davidson stated that most of the project could be done remotely after the hardware

installation and that the installation would take approximately one week.  Multiple times in January and February 2016, Davidson and Svoboda stated by phone that the installation would take place the week of February 22, 2016.

On February 22, 2016, Davidson only performed a second site assessment and did not install equipment.  Over the next several months, Firefly made numerous representations that Firefly would start the installation but did not do so.

On May 2, 2016, Firefly asked for a second deposit.  In reliance on Firefly's continued misrepresentations regarding Firefly's technical experience and ability to implement the project, Plaintiff paid an additional $28,000.

Contrary to Firefly's representations that it could complete the project in three months, Firefly did not even ship parts of the hardware until six months after receiving deposits.  None of hardware had any firmware[2] in it, and it would not work when it was received.  Moreover, in July 2016, Plaintiff learned that the

---

[2] "Firmware is a software program or set of instructions programmed on a hardware device."  https://techterms.com/definition/firmware (last visited February 26, 2019).

software Firefly was supposed to create for the project had not been started.

Contrary to the representations that Firefly had the technical experience, expertise, and ability to complete the project, Plaintiff learned after months of working with Firefly that no one at Firefly knew how to deploy part of the hardware system known as the Convergence Systems Ltd. system and make it operational. Plaintiff then learned that Davidson's statement that he had installed such a system for General Electric was false.

In November 2016, Defendant Davidson said one aspect of the project, the hoppers, was working fine, but still needed to be tested with metal totes. In January 2017, in response to an inquiry from Fiberteq, Firefly stated that the hoppers had not been working since early December 2016 and that the problem had nothing to do with metal totes. Firefly represented that it would put an automatic restart in the software to prevent future issues of this type. In March 2017, Firefly again found the hoppers were down and, despite a weekend site visit from Davidson, only one of the four hoppers was working the following Monday. Plaintiff paid

for a third party to replace the readers and software for all four hoppers because they were still not working.

To continue the project moving forward, Plaintiff took steps to perform work or hire others to perform work for which Firefly was responsible. As of May 12, 2017, the costs and expenses incurred as a result of Firefly's inability or refusal to provide services totaled $395,542.38. Firefly has refused to pay Plaintiff. In addition, Firefly has demanded additional money from Plaintiff and threatened to withhold what it committed to deliver if Firefly were not paid additional money. Contrary to Defendant Davidson's promise that Plaintiff would own the software developed by Firefly for the Fiberteq project, Firefly demanded that Plaintiff pay additional money to license the software.

Defendants Svoboda and Jouko Lahepelto, the Chairman of Firefly, contacted Fiberteq in an attempt to obtain money to which Firefly was not entitled. Further, on August 7, 2017, Firefly filed a mechanic's lien against Fiberteq's property.

The Second Amended Complaint contains six counts: Count I, against Firefly, is a claim for breach of contract; Count II, against Firefly, Davidson, and Svoboda, is a claim for fraudulent

inducement and fraudulent misrepresentation; Count III, against

Firefly, Lahepelto, and Svoboda, is a claim for tortious interference

with prospective business relations; Count IV, against all of the

defendants, is a claim for unfair competition; Count V, against all

of the defendants, is a claim for quantum meruit; and Count VI,

against all of the defendants, is a claim for unjust enrichment.

## IV. ANALYSIS

Defendants have moved to dismiss Counts II, IV, V, and VI of

the Second Amended Complaint.

### A. Count II States a Claim for Fraudulent Inducement and Fraudulent Misrepresentation

Defendants Firefly and Svoboda move to dismiss Count II, the

fraudulent inducement and fraudulent misrepresentation claim.[3]

Firefly and Svoboda argue that Plaintiff bases its claim for fraud on

the theory that Firefly and Svoboda misrepresented the time by

which they promised to complete projects.  Firefly and Svoboda

assert that these statements, even if actually made, do not

---

[3] The elements of a fraudulent inducement and a fraudulent misrepresentation claim are the same.  Compare Enter. Recovery Sys., Inc. v. Salmeron, 401 Ill. App. 3d 65, 72 (2010) (fraudulent inducement) with Doe v. Dilling, 228 Ill.2d 324, 342-43 (2008) (fraudulent misrepresentation).

constitute fraud because the statements are statements of future intention.

Plaintiff responds that Defendant Davidson raised the same argument in the first Motion to Dismiss and the Court rejected that argument.  Plaintiff asserts that, for the same reasons, the Court should deny Defendants Firefly and Svoboda's motion to dismiss Count II.

The Court agrees with Plaintiff.  Judge Bruce previously refused to dismiss Count II on the ground that the representations were promises of future performance and not actionable.  Judge Bruce held that Plaintiff pled its claim of fraudulent misrepresentation with the particularity required by Federal Rule of Civil Procedure 9(b).  In addition, Judge Bruce, quoting McIntosh v. Magna Sys. Inc., 539 F. Supp. 1185, 1191 (N.D. Ill. 1982), held that, at this stage of the litigation, "[t]he specific representations underlying the . . . agreement between the parties . . . are not presently before the [c]ourt.  We cannot dismiss a cause of action based on representations, the specific terms of which we have not yet examined."  Opinion at 16 (d/e 40).  Firefly and

Svoboda provide no basis for deviating from that ruling.  Therefore, the motion to dismiss Count II is denied.

**B.      Count IV States an Unfair Competition Claim against Firefly, Lahepelto, and Svoboda But Not Against Davidson**

In Count IV, brought against all of the defendants, Plaintiff alleges that the defendants' wrongful acts constitute unfair competition under Illinois common law.

Although the common law tort of unfair competition encompasses a broad spectrum of law, Illinois courts have not specifically identified the elements of a common law unfair competition claim.  LG Elecs. v. Whirlpool Corp., No. 08 C 242, 2010 WL 3521785, at *2 (N.D. Ill. Sept. 1, 2010).  Some courts "have recognized that the allegations underlying a claim of tortious interference with prospective economic advantage also suffice to state a claim for unfair competition."  BlueStar Mgmt. v. the Annex Club, LLC, No. 09 C 4540, 2010 WL 2802213, at *9 (N.D. Ill. July 12, 2010) (citing Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1997 WL 223067, at *14 (N.D. Ill. Mar. 27, 1997)).  Other courts conclude that the common law unfair competition tort has been codified by the Uniform Deceptive Trade Practices Act.  LG Elec.,

2010 WL 3521785, at *2 (citing cases); <u>but</u> <u>see</u> <u>Custom Bus. Sys.,</u>

<u>Inc. v. Boise Cascade Corp.</u>, 68 Ill. App. 3d 50, 52 (1979) (noting

that "we are not inclined to dispute that there may be a cause of

action under certain aspects of the common law which are not

covered by the Uniform Deceptive Trade Practices Act").  When the

allegations are insufficient to state a cause of action for tortious

interference or deceptive trade practice, courts often find that the

same allegations are also insufficient to support an unfair

competition claim.  <u>See</u> <u>The Film & Tape Works, Inc. v.</u>

<u>JuneTwenty Films, Inc.</u>, 368 Ill. App. 3d 462, 473 (2006) (where

summary judgment was granted on the tortious inference claim,

the court disposed of the unfair competition claim without further

analysis); <u>Custom Bus. Sys.</u>, 68 Ill. App. 3d at 53 (finding the

plaintiff did not set forth an unfair competition claim beyond the

allegations for a violation of the Uniform Deceptive Trade Practices

Act and affirming the dismissal of both claims).

    In the previous order on the motions to dismiss, Judge Bruce

found that Plaintiff failed to state a Deceptive Trade Practices Act

claim in what was Count IV of the First Amended Complaint.

Order at 20-21.  The Court concluded, however, that because

Plaintiff sufficiently alleged a common law cause of action for tortious interference with prospective business relations, Plaintiff stated an unfair competition claim. <u>Id.</u> at 22. Judge Bruce's Order does not explain, however, why the unfair competition claim remained against Davidson in light of the fact that the Court dismissed the tortious interference with prospective business relations claim against Davidson for failure to state a claim.

Defendant Davidson now moves to dismiss the unfair competition claim on the ground that Plaintiff has not stated a tortious interference with prospective business relations against him. Plaintiff responds that the allegations supporting the fraudulent inducement and fraudulent misrepresentation claim establish facts sufficient to allege an unfair competition claim. Resp. at 3 (d/e 49).

While the elements of an unfair competition claim are "elusive" (<u>Wilson v. Electro Marine Sys., Inc.</u>, 915 F.2d 1110, 1118 (7th Cir. 1990)), Plaintiff does not explain how the allegations supporting the fraudulent inducement and fraudulent misrepresentation claim—which pertain to alleged false statements by Davidson to Plaintiff to induce Plaintiff to act—constitute unfair

competition.  Generally, "unfair competition claims arise where one business takes advantage of another's resources and quashes competition."  <u>Anic v. DVI Fin. Servs., Inc.</u>, No. 01 C 0383, 2001 WL 477139, at *4 (N.D. Ill. May 3, 2001).  As Plaintiff states neither a Deceptive Trade Practices Act or tortious interference with prospective business relations claim against Davidson, the Court dismisses the unfair competition claim against Davidson.

Defendants Firefly, Lahepelto, and Svoboda move to dismiss Count IV for failure to state a claim because Plaintiff alleges a claim for unfair competition without alleging trademark infringement.  Defendants assert that a claim for common law unfair competition is generally only allowed as it pertains to a claim of trademark infringement.  Mem. at 4.

However, Defendants' only authority for such an assertion is <u>AHP Subsidiary Holding Co. v. Stuart Hale Co.</u>, 1 F.3d 611, 619 (7th Cir. 1993), which merely held that a "state unfair competition claim is analyzed under the likelihood of confusion standard and thus mirrors our infringement analysis."  And the Court has not found any authority that an unfair competition claim is limited to instances of trademark infringement.  <u>See, e.g.</u>, <u>KJ Korea, Inc. v.</u>

<u>Health Korea, Inc.</u>, 66 F. Supp. 3d 1005, 1012 (noting distinctions between non-trademark related unfair competition and trademark-related unfair competition).  Therefore, the Court denies the motion to dismiss Count IV filed by Defendants Firefly, Lahepelto, and Svoboda.

**C.**   **Count V States a Claim in Quantum Meruit Against Firefly But Fails to State a Claim Against Davidson, Lahepelto, and Svoboda**

All of the defendants seek to dismiss Count V, the quantum meruit claim, asserting that Plaintiff failed to allege that Plaintiff provided a benefit to Defendants.  Davidson also argues that Plaintiff fails to allege that Davidson accepted a benefit from Plaintiff and that Plaintiff cannot state a claim for quantum meruit because Plaintiff alleged the existence of a contract concerning the same subject matter.

To state a claim for quantum meruit, a plaintiff must allege that (1) the plaintiff performed a service to benefit the defendant; (2) the plaintiff did not perform the service gratuitously; (3) the defendant accepted the service; and (4) no contract existed to prescribe payment of the service.  <u>Rubin & Norris, LLC v. Panzarella</u>, 2016 IL App (1st) 141315, ¶ 36.  However, a party

cannot pursue a quantum meruit claim if an enforceable express contract exists between the parties. <u>Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.</u>, 267 Ill. App. 3d 742, 750 (1994). Nonetheless, a plaintiff can plead a quantum meruit claim and a breach of contract claim in the alternative. <u>See</u> <u>DeGeer v. Gillis</u>, 707 F. Supp. 2d 784, 799 (N.D. Ill. 2010); Fed. R. Civ. P. 8(d)(2)-(3).

In this case, Plaintiff alleges that Plaintiff performed tasks that Firefly had been "contracted" to perform (Sec. Am. Compl. ¶ 75), that it would be unjust for Firefly to benefit from Plaintiff completing Firefly's "contractual obligations" (<u>id.</u> ¶ 78), and that Firefly should compensate Plaintiff for Plaintiff's work to complete Firefly's "contractual obligations" (<u>id.</u> ¶ 79). Plaintiff incorporated by reference allegations that Plaintiff paid $47,579.50 to Firefly (<u>id.</u> ¶ 74 incorporating ¶ 27) and an additional $28,000 to Firefly in reliance on Firefly's misrepresentations regarding Firefly's experience and ability to implement the Fiberteq project (<u>id.</u> ¶ 32). Plaintiff also alleges that Plaintiff's efforts to complete Firefly's tasks prevented Fiberteq from seeking redress from Firefly directly for Firefly's faulty work, which benefited Firefly and its officers, Davidson, Lahepelto, and Svoboda. (<u>Id.</u> ¶ 43).

While these allegations suggest the existence of a contract, the allegations do not necessarily suggest the existence of a contract between Plaintiff and Firefly. Moreover, Plaintiff specifically failed to incorporate by reference in Count V those allegations that supported the existence of a contract between the parties. Therefore, the Court will not dismiss Count V on the basis that Plaintiff pleaded the existence of a contract between the parties.

As for the argument that Plaintiff fails to allege a benefit to Defendants, Plaintiff alleges that Plaintiff paid money to Firefly, performed work Firefly was responsible for performing, and that these efforts prevented Fiberteq from seeking redress against Firefly. These facts are sufficient to allege that Plaintiff performed a service to benefit Firefly. However, Plaintiff has not alleged any facts to support the allegation that the individual defendants – Davidson, Lahepelto, and Svoboda—received a benefit. The legal conclusion that the officers of the corporation benefited from Plaintiff's assumption of Firefly's tasks is insufficient. See, e.g., McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) ("[A]llegations in the form of legal conclusions are

insufficient to survive a Rule 12(b)(6) motion").  Therefore, the

claims against Davidson, Lahepelto, and Svoboda in Count V are

dismissed.

**D.  Count VI States a Claim for Unjust Enrichment Against Firefly, Lahepelto, and Svoboda But Fails to State a Claim Against Davidson**

All of the defendants move to dismiss Count VI, the unjust

enrichment claim, for failure to state a claim.  Plaintiff agrees to

the dismissal of Count VI against Davidson.

Firefly, Lahepelto, and Svoboda move to dismiss Count VI on

the ground that Plaintiff alleges an express oral contract, which

precludes Plaintiff from pursuing this cause of action.

To state a claim for unjust enrichment, "a plaintiff must

allege that the defendant has unjustly retained a benefit to the

plaintiff's detriment, and that defendant's retention of the benefit

violates the fundamental principles of justice, equity, and good

conscience."  HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.,

Inc., 131 Ill.2d 145, 160 (1989).  Because unjust enrichment is

based on an implied contract, the theory does not apply where an

express oral or written contract governs the parties' relationship.

People ex rel. Hartigan v. E & E Hauling, Inc., 153 Ill.2d 473, 497

(1992).  A plaintiff may plead breach of contract and unjust

enrichment in the alternative but cannot include allegations of an

express contract in the unjust enrichment count.  <u>Guinn v.

Hoskins Chevrolet</u>, 361 Ill.App.3d 575, 604 (2005).

In Count VI, Plaintiff incorporated by reference allegations

that Davidson "proposed a solution that was premised on the use

of Convergency Systems Ltd. ("CSL") hardware and software."  Sec.

Am. Compl. ¶ 80 incorporating ¶ 23.  Plaintiff further alleges that

Davidson "affirmatively stated that Firefly had the technical

experience to complete the project."  <u>Id.</u> ¶ 32.  Plaintiff paid

$47,579.50 to Firefly (<u>id.</u> ¶ 27) and an additional $28,000 to Firefly

in reliance on Firefly's misrepresentations regarding Firefly's

experience and ability to implement the Fiberteq project (<u>id.</u> ¶ 32).

Plaintiff alleges that Firefly received payments from Plaintiff for

work that it did not perform and received a mechanic's lien on

Fiberteq's property based upon allegations that money was due for

work that it did not perform.  <u>Id.</u> ¶ 81.

As with the quantum meruit claim, while the allegations

suggest the possibility of the existence of the contract, the claim

does not necessarily allege the existence of a contract that governs

the relationship between Plaintiff and Firefly.  See Prudential Ins. Co. of Am. v. Clark Consulting, Inc., 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008) (finding the plaintiff adequately alleged the unjust enrichment claim as an alternative to a breach of contract claim where it could reasonably be inferred the plaintiff was pleading in the alternative and the unjust enrichment count did not refer to or incorporate allegations referring to the contract between the parties).  Therefore, the Court will not dismiss Count VI on the ground raised by Defendants Firefly, Lahepelto, and Svoboda.  The claim against Davidson in Count VI is dismissed, as Plaintiff concedes that it is appropriate to dismiss Count VI as to Davidson. Resp. at 4 (d/e 49).

## V. CONCLUSION

For the reasons stated, the Motions to Dismiss filed by Dr. William Davidson (d/e 45) and Defendants RFID Resolution Team Inc. d/b/a Firefly RFID Solutions, Jouko Lahepelto, and Jan Svoboda (d/e 47) are GRANTED IN PART and DENIED IN PART. The Court dismisses Counts IV, V and VI against Davidson and Count V against Lahepelto and Svoboda without prejudice.  The following claims in the Second Amended Complaint remain:

(1) Count I against Firefly

(2) Count II against Firefly, Davidson, and Svoboda

(3) Count III against Firefly, Lahepelto, and Svoboda

(4) Count IV against Firefly, Lahepelto, and Svoboda

(5) Count V against Firefly

(6) Count VI against Firefly, Lahepelto, and Svoboda

Defendants shall file answers to the Second Amended Complaint on or before March 12, 2019.  Plaintiff shall file an answer to the remaining allegations of the Counter-Complaint (d/e 28) on or before March 12, 2019.

**ENTERED: February 26, 2019**

**FOR THE COURT:**

    **s/*Sue E. Myerscough***
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**